IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DONALD JONES,** | | |
| *Plaintiff*, | | |
| **v.** | | Civil No.: 1:24-cv-01333-JRR |
| **QUEEN ANNE'S COUNTY, MARYLAND,** *et al.*, | | |
| *Defendants*. | | |

## MEMORANDUM OPINION

Pending before the court is Defendant Sergeant Daniel Andrew, Sergeant Heather Edwards, Officer Christopher Barnett, Officer Carla Patterson, Officer Linda Roark, Officer Larry E. Hinch, and Officer Travis Horney's ("Correctional Officer Defendants") Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 13; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion, construed as a motion for summary judgment, will be granted.

## I.    BACKGROUND

Plaintiff Donald Jones initiated this action based upon injuries he suffered while detained at the Queen Anne's County Detention Center ("QACDC"). (ECF No. 1 ¶ 1.) Queen Anne's County, Maryland (the "County") operates QACDC through its Department of Correction. *Id.* ¶ 13.[1] Defendant Cooke serves as the Director of the Department of Public Safety Corrections and Warden/Director of QACDC. *Id.* ¶ 14. Defendants Andrew and Edwards are both shift

---

[1] The court is unaware of any such department within Queen Anne's County; according to the County's public website, the QACDC is its own department and a Department of Correction does not appear to exist. This is not material to the opinion of the court or the Motion. https://www.qac.org/148/Departments (last accessed: March 6, 2025).

supervisors with QACDC. *Id.* ¶¶ 15–16.  Defendants Barnett, Patterson, Roark, Hinch, and Horney are all correctional officers with QACDC. *Id.* ¶¶ 17–18.

## II.    <u>UNDISPUTED FACTS</u>

The County and QACDC "created policies and procedures to establish guidelines for 24-hour emergency medical services at the Detention Center."  (ECF No. 1 ¶ 53; ECF No. 13-1 at p. 1.)  Related to those policies and procedures, QACDC "has a duty to hire Qualified Health Care Professionals" ("QHCPs") "to treat the inmates." (ECF No. 1 ¶ 54; ECF No. 13-1 at p. 1.)  QHCPs have a duty to "provide the necessary treatment and refer the inmate for additional treatment if required"; "[i]n cases requiring immediate emergency medical attention beyond the capability of the QHCP's, the QHCP shall refer the patient to the nearest emergency facility."  (ECF No. 1 ¶¶ 55–56; Ex. 9, QACDC Medical Policies and Procedures, ECF No. 13-10 at p. 1.)  A "QHCP shall evaluate all individuals for medical problems prior to detention. The aforementioned personnel shall be responsible for filling out the Admission Data and Medical Screening Record form."  (ECF No. 1 ¶ 62; QACDC Medical Policies and Procedures, ECF No. 13-10 at p. 2.)

On May 20, 2021, Plaintiff Donald Jones was sentenced to 60 days of incarceration at QACDC, with all but ten (10) days suspended.  (ECF No. 1 ¶ 2; ECF No. 13-1 at pp. 1–2. )  He arrived at QACDC that same day around 11:00 a.m.  (ECF No. 1 ¶ 65; Ex. 1, Inmate Commitment Summary Rep., ECF No. 13-2.)  Upon his arrival, Defendant Hinch completed an Inmate Medical Intake Form that indicated Plaintiff suffered from "COPD" and "asthma."  (ECF No. 1 ¶ 66; ECF No. 13-1 at p. 2.)  Defendant Hinch also completed Plaintiff's Mental Health Screening Form; the form detailed that Plaintiff used alcohol every day and that his last use was on May 19, 2021. (ECF No. 1 ¶ 67; Ex. 2, Mental Health Screening Form, ECF No. 13-3.)  Plaintiff's Classification Questions form further revealed that he was afforded a score of "0" as to the classification of his

dependency problem, indicating he had a "current dependency problem." (ECF No. 1 ¶ 69; Ex. 3, Classification Questions, ECF No. 13-4.) Following these intake and screening processes, due to his medical needs, Plaintiff was placed in administrative segregation on the "Detox Unit" that same day. (ECF No. 1 ¶ 4; Ex. 4, Notice of Assignment, ECF No. 13-5.)

The following day, various QHCPs, employed by Wellpath, a third-party medical services company, performed additional screenings of Plaintiff; which revealed several physical and mental health issues, including, *inter alia,* that Plaintiff: 1) suffered from vomiting and night sweats; 2) admitted to extended daily alcohol use; 3) had gone through alcohol withdraw about a year-and-a-half before that time, during which he experienced tremors; and 4) he was "currently withdrawing from alcohol and experiencing symptoms." (ECF No. 1 ¶ 71(g), (h); ECF No. 13-1 at p. 2; Ex. 5, Wellpath Receiving Screening, ECF No. 13-6.) The QHCP thus ordered an "Alcohol Withdrawal protocol" for Plaintiff that same day, requiring that he be housed in the medical unit and his activity be limited to bed rest. (ECF No. 1 ¶ 77; Ex. 6, Detox Protocol Order, ECF No. 13-7 at p. 3.) Plaintiff was also put on a medication protocol related to his alcohol withdrawal. (ECF No. 1 ¶ 77; Detox Protocol Order, ECF No. 13-7 at p. 3.)

Over the next two days, Plaintiff was observed on an hourly basis. (ECF No. 1 ¶ 78; Ex. 7, Security Check Sheet, ECF No. 13-8.) He was "mainly observed laying [sic] or sitting on the floor or his bunk." (ECF No. 1 ¶ 79; Security Check Sheet, ECF No. 13-8.) Plaintiff went to medical at least once daily on May 21 and May 22, 2021. (ECF No. ¶ 82; Security Check Sheet, ECF No. 13-8.) On May 22, 2021, Plaintiff was observed on intervals ranging generally between 15 to 60 minutes. (ECF No. ¶ 83; Security Check Sheet, ECF No. 13-8.) Again, he was mainly observed sitting and lying down. (Security Check Sheet, ECF No. 13-8.) By the evening of May 22, 2021, Plaintiff was monitored in intervals of 15 to 30 minutes. (ECF No. 1 ¶ 83; Security

Check Sheet, ECF No. 13-8.)  On May 23, 2021, Plaintiff was again monitored every 15 to 30 minutes; he was generally observed siting and lying down.  (Security Check Sheet, ECF No. 13-8.)  He also went to medical again.  (ECF No. 1 ¶ 85.)

As documented by Defendant Andrew in a QACDC Matter of Record report of May 24, 2021, earlier that day (May 24, 2021), at approximately 6:00 a.m., Defendants Andrew and Barnett observed signs that Plaintiff's condition had deteriorated.  (ECF No. 1 ¶ 86; Ex. 8, Matter of Record, ECF No. 13-9.)  They observed Plaintiff "laying [sic] on the floor, bent over" and "[i]t was apparent that [he] had soiled himself and vomited."  (ECF No. 1 ¶ 86; Matter of Record, ECF No. 13-9.)  Plaintiff responded when spoken to, but stayed lying down; Plaintiff declined Andrew and Barnett's offer to help him sit upright.  (Matter of Record, ECF No. 13-9.)  Andrew further reported: "I informed staff that medical would be in soon to check his vitals, but since he was responding to questions, we would just watch him closely until then, as he was on observation for alcohol withdrawals."  (Matter of Record, ECF No. 13-9; ECF No. 1 ¶ 87.)  At about 6:20 a.m., a QHCP arrived who "had to check all the diabetic inmates first."  (Matter of Record, ECF No. 13-9.)  About 10 minutes later (6:30 a.m.), Defendant Roark told Andrew that the QHCP did not respond to her call and asked Andrew to accompany her (Roark) to check on Plaintiff, which he did.  *Id.*

Upon return to Plaintiff's cell, Andrew and Roark found Plaintiff in the same physical position "but less lucid," and Plaintiff had apparently vomited.  (ECF No. 1 ¶ 88; Matter of Record, ECF No. 13-9.)  Defendant Andrew sat Plaintiff up but Plaintiff "slumped onto his right side," so Andrew placed Plaintiff in the "recovery position" and Defendant Patterson placed a blanket under his head as a pillow.  (ECF No. 1 ¶ 89; Matter of Record, ECF No. 13-9.)  Andrew alerted the QHCP that Plaintiff "needed to be seen soon as his condition was worsening."  *Id.*

Ten minutes later, at about 6:40 a.m., Defendant Andrew returned again to check on Plaintiff. At that time, Andrew observed "dark brown, mucous like discharge coming from his mouth," which Andrew wiped away to prevent Plaintiff from aspirating the discharge. (ECF No. 1 ¶¶ 91, 94; Matter of Record, ECF No. 13-9.) Defendant Andrew spoke to Plaintiff; Plaintiff made noises in response. (ECF No. 1 ¶ 92; Matter of Record, ECF No. 13-9.) At this point, Defendant Andrew again told the QHCP that Plaintiff's condition had continued to worsen and he "needed to be seen quickly." (ECF No. 1 ¶ 94; Matter of Record, ECF No. 13-9.)

Five minutes later, at about 6:45 a.m., Defendant Andrew again checked on Plaintiff and moved his head to prevent aspiration of pooling discharge. In response, Plaintiff told Defendant Andrew to "get the fuck off of him." (ECF No. 1 ¶ 95; Matter of Record, ECF No. 13-9.) The QHCP arrived shortly thereafter, assessed Plaintiff vitals, and had him transported to the hospital. (ECF No. 1 ¶ 96; Matter of Record, ECF No. 13-9.) Emergency Medical Services ("EMS") arrived to transport Plaintiff at around 7:08 a.m. (ECF No. 1 ¶ 97; Matter of Record, ECF No. 13-9.) Defendant Andrew helped EMS get Plaintiff into the ambulance. (Matter of Record, ECF No. 13-9.) EMS transported Plaintiff to the hospital at around 7:13 a.m.; Barnett rode with Plaintiff to the hospital. (ECF No. 1 ¶ 97; Matter of Record, ECF No. 13-9.) Plaintiff was hospitalized "for months" following the incident; upon discharge, he continued care at a "nursing home" and, thereafter, received home healthcare as needed. (ECF No. 1 ¶ 100; ECF No. 13-1 at p. 4.)

Plaintiff initiated this action on May 7, 2024. (ECF No. 1.) Plaintiff asserts the following counts:

> Count I: Violation of Fourth, Eighth, and Fourteenth Amendment under 42 U.S.C. § 1983 based upon Denial of Adequate Medical Care against all Defendants;

<u>Count II</u>: Violation of Articles 16, 19, 24, 25, and 26 of the Maryland Declaration of Rights based upon Denial of Adequate Medical Care against all Defendants;

<u>Count III</u>: Negligence against all Defendants;

<u>Count IV</u>: Gross Negligence against all Defendants;

<u>Count V</u>: Negligent Training against Defendants the County, Cooke, Andrew, and Edwards;

<u>Count VI</u>: Negligent Supervision against Defendants the County, Cooke, Andrew, and Edwards; and

<u>Count VII</u>: *Monell*[2] Claim based upon violation of the Fourth Amendment under 41 U.S.C. § 1983 against Defendant the County.

(ECF No. 1 ¶¶ 122–229.)  Correctional Officer Defendants seek dismissal of, or alternatively, summary judgment on, all claims.  (ECF No. 13.)

## III.  <u>LEGAL STANDARD</u>

### A. Federal Rule of Civil Procedure 12(d)

Correctional Officer Defendants bring their Motion as a motion to dismiss or, alternatively, for summary judgment.  "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)."  *Hayes v. Maryland Transit Admin.*, 708 F. Supp. 3d 683, 688 (D. Md. 2023), *aff'd,* No. 24-1482, 2024 WL 4262786 (4th Cir. Sept. 23, 2024) (quoting *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022)).  Federal Rule of Civil Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).

---

[2] In *Monell v. Department of Social Services*, the Supreme Court explained that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  436 U.S. 658, 694 (1978).

"A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it'"; such discretion "should be exercised with great caution and attention to the parties' procedural rights." *Sammons v. McCarthy*, 606 F. Supp. 3d 165, 193 (D. Md. 2022) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018)); *see Sol v. M&T Bank*, 713 F. Supp. 3d 89, 99–100 (D. Md. 2024) (same).   "In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Sammons*, 606 F. Supp. 3d at 193 (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder v. Maryland Dep't of Transportation*, No. CV CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).  Where a movant expressly captions a motion as one for summary judgment "in the alternative," the non-movant is "on notice that this motion might be treated as one for summary judgment"; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

"Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol*, 713 F. Supp. 3d at 100 (citing *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542–43 (D. Md. 2012)). Even where a party fails to file an affidavit, "a district court abuses its discretion by granting summary judgment when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (quoting *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)).

The nonmovant may not, however, "complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see Shaw*, 59 F.4th at 128 (same). A non-movant "may not demand discovery for discovery's sake; a Rule 56(d) request is properly denied 'where the additional evidence sought . . . would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Gardner v. United States*, 184 F. Supp. 3d 175, 181–82 (D. Md. 2016) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995)).

The first requirement is plainly met here where Plaintiff had notice that the Motion may be treated as a motion for summary judgment based on the caption of the Motion. *See Laughlin*, 149 F.3d at 260, *supra*. As to the second requirement, Plaintiff does not argue that discovery is needed; to the contrary, he effectively joins Correctional Officer Defendants' request that the court convert the motion to a motion for summary judgment, and asserts that the court "should" (and seemingly must) convert the Motion to one for summary judgment. (ECF No. 17 at p. 3.) Specifically,

8

Plaintiff urges that the court "cannot entirely exclude" exhibits attached to the Motion and "should construe" the Motion as a motion for summary judgment. *Id.*

While the court, in the normal course of its judicial duties, often declines to convert alternative dispositive motions per Rule 12(d), especially when discovery has not commenced, all parties request the court adjudicate the Motion as a Rule 56 motion. Further, as explained above, Plaintiff makes no argument that he requires discovery to oppose the Motion and raises no dispute as to the authenticity or admissibility of the documents offered by Correctional Officer Defendants in support of their Motion. Accordingly, the court will heed the parties' requests and convert the Motion to one for summary judgment.[3]

### B. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding

---

[3] At the conclusion of Plaintiff's opposition, he includes a "conditional request" to amend his Complaint should the court grant the Motion. (ECF No. 17 at p. 26.) The court construes Plaintiff to request leave to amend in the event the court were to grant the Motion under 12(b)(6). That request is, therefore, denied as moot.

to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh evidence or make credibility determinations."  *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## IV.    ANALYSIS

### A.  Counts I and II as to the Fourth and Fourteenth Amendments and Articles 19, 24, and 26 of the Maryland Declaration of Rights

The parties are in agreement that Plaintiff's claims are properly analyzed under the Eighth Amendment of the Constitution and its Maryland constitutional counterparts, Articles 16 and 25 of the Maryland Declaration of Rights.  From there, the parties go their separate ways. Specifically, Correctional Officer Defendants contend that the Fourth Amendment (and its Maryland counterpart in Article 26), the Fourteenth Amendment (and its Maryland counterpart in

Article 24), and Article 19 have no place in Plaintiff's claims. (ECF No. 13-1 at p. 12 n.4; ECF No. 22 at p. 22.)

The court thus considers whether Plaintiff's claims of denial of adequate medical care are properly asserted as pled.

### 1. *Fourth Amendment and Article 26*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Relatedly, Article 26 of the Maryland Declaration of Rights provides that "all warrants, without oath or affirmation, . . . to seize any person or property, are grievous and oppressive." MD. CONST. DECL. OF RTS. ART. 26. Claims arising under the Fourth Amendment and Article 26 are properly analyzed together because Maryland courts "interpret Article 26 *in pari materia* with the Fourth Amendment, meaning that the protections under Article 26 are coextensive with those under the Fourth Amendment." *Washington v. State*, 482 Md. 395, 454–55 (2022) (citing cases).

As the court discusses at length in this opinion, "[c]laims that prison officials failed to provide adequate medical care to an inmate, like excessive force claims, sound in the Eighth Amendment." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). That notwithstanding, Plaintiff's Fourth Amendment theory is as follows:

> The failure to provide adequate medical care inevitably imposes restraints on one's freedom of movement as that individual's health decreases to the point of limiting their ability to move freely. But for the failure to provide adequate medical care, the individual's condition would not have worsened, and the individual's freedom of movement would not have been restrained. Therefore, a government entity's policy or custom of withholding adequate medical care plainly effectuates a seizure and thus sounds in the Fourth Amendment.

(ECF No. 17 at p. 15.)

While the Fourth Circuit has previously "assum[ed] that the Fourth Amendment continues to apply to lawfully confined prisoners" when considering the reasonableness of a search in the context of an incarcerated person's "interest in some degree of bodily privacy and integrity," *King v. Rubenstein*, 825 F.3d 206, 215 (4th Cir. 2016) (citations omitted), the overwhelming weight of controlling authority unquestionably holds that claims of deliberate indifference to medical care are analyzed under the Eighth, and not the Fourth, Amendment. *See, e.g.*, *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Apart from the controlling authority directly on point, the broader fabric of authority on what constitutes a seizure for Fourth Amendment purposes demonstrates that Plaintiff's proposition lacks footing. A seizure is generally considered a use of physical force or show of authority to restrain a person's liberty. *United States v. Mendenhall*, 446 U.S. 544, 552 (1980) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). Neither Plaintiff's allegations nor the undisputed facts reflect (or support a reasonable finding) of any use of force or show of authority to restrain Plaintiff's liberty.[4] Plaintiff offers no authority to support a theory that officer inaction, or, relevant here, insufficient assistance, is equivalent to a show of force or authority for purposes of the Fourth Amendment; and the court knows of none.

---

[4] As Correctional Officer Defendants note, the decision in *Drury v. Dziwanowski* is of no precedential value here. There, the court simply "assume[d] for the purposes of analysis that the Fourth Circuit has recognized a Fourth Amendment or other claim based upon an unreasonable denial of medical treatment" before concluding the plaintiff failed to generate evidence sufficient to overcome a defense summary judgment. No. CV MJG-15-3845, 2017 WL 1153890, at *8 (D. Md. Mar. 28, 2017).

The caselaw Plaintiff relies upon provides no support for his position. *King v. Rubenstein*, 825 F.3d 206 (4th Cir. 2016), pertains to Fourth Amendment protection from searches as applied to prisoners and the plaintiff's corollary reasonable expectation of privacy. *Heyer v. United States Bureau of Prisons*, 849 F.3d 202 (4th Cir. 2017), appears even more misplaced in the instant action. Plaintiff cites *Heyer* for the proposition that an officer's refusal to provide adequate medical care constitutes a seizure under the Fourth Amendment, because the Fourth Circuit "recogniz[ed] that a 'seizure suffered by an inmate amounted to a serious medical need to which indifference would likely have been a constitutional violation in itself." (ECF No. 17 at p. 16) (citation omitted). The "seizure" at issue was a medical event, not a Fourth Amendment seizure. *Heyer*, 849 F.3d at 210 (citing *Shreve v. Franklin Cty.*, 743 F.3d 126, 135 (6th Cir. 2014)). *Heyer* does not mention the Fourth Amendment.

Accordingly, as Plaintiff's claims arise from an alleged denial of medical care that occurred during his incarceration post-conviction, such claims are properly analyzed under the Eighth, not the Fourth, Amendment.

### 2. Fourteenth Amendment and Article 24

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. Similarly, Article 24 of the Maryland Declaration of Rights provides that no person "ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." MD. CONST. DECL. OF RTS. ART. 24. "Article 24 of the Maryland Declaration of Rights is the state law equivalent of the Fourteenth Amendment of the United States." *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496 (D. Md. 2013), *aff'd sub nom. In re Canarte*,

558 F. App'x 327 (4th Cir. 2014) (citation omitted).  Article 24 "is *in pari materia* with the Due

Process Clause of the Fourteenth Amendment."  *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 185

Md. App. 625, 636 (2009) (citing *Dua v. Comcast Cable of Md., Inc.,* 370 Md. 604, 628 (2002)).

The court thus analyzes these claims together.  *See Hawkins*, 955 F. Supp. 2d at 496 (explaining

that "the analysis under Article 24 is, for all intents and purposes, duplicative of the analysis under

the Fourteenth Amendment") (citation omitted).

Again, as the court has discussed, courts in the Fourth Circuit regularly analyze claims like

those Plaintiff asserts under the Eighth Amendment.  Moreover, the material distinction between

claims arising under the Eighth Amendment as opposed to the Fourteenth Amendment is well-

recognized:

> Eighth Amendment scrutiny is appropriate only after the State has
> complied with the constitutional guarantees traditionally associated
> with criminal prosecutions . . . . [T]he State does not acquire the
> power to punish with which the Eighth Amendment is concerned
> until after it has secured a formal adjudication of guilt in accordance
> with due process of law. Where the State seeks to impose
> punishment without such an adjudication, the pertinent
> constitutional guarantee is the Due Process Clause of the Fourteenth
> Amendment.

*Ingraham v. Wright*, 430 U.S. 651, 671 (1977).  Accordingly, the Fourteenth Amendment protects

against cruel and unusual punishment imposed upon pretrial detainees.  *Short v. Hartman*, 87 F.4th

593, 606 (4th Cir. 2023), *cert. denied,* 144 S. Ct. 2631 (2024); *see Bell v. Wolfish*, 441 U.S. 520,

537 n.16 (1979) (explaining that where "the State seeks to impose punishment without such an

adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth

Amendment," not the Eighth Amendment); *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021)

(explaining that since the plaintiff was a "pretrial detainee and not a convicted prisoner," the

Fourteenth Amendment governed his claim, not the Eighth Amendment).

Therefore, Plaintiff's claims (which arise from his post-conviction incarceration) are properly analyzed under the Eighth Amendment, not the Fourteenth Amendment. *See Gough v. Semexan*, No. CV BPG-21-14, 2022 WL 2073855, at *3 (D. Md. June 9, 2022) (dismissing the plaintiff's claims raised under the Fourteenth Amendment and Article 24 because the "plaintiff is a sentenced prisoner, [and] his claim of excessive force arises only under the Eighth Amendment and Maryland's state law analogs, not the Fourteenth Amendment").

### 3. *Article 19*

Article 19 of the Maryland Declaration of Rights provides "[t]hat every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land." MD. CONST. DECL. OF RTS. ART. 19. "It is a 'basic tenet, expressed in Article 19 of the Maryland Declaration of Rights, that a plaintiff injured by unconstitutional state action should have a remedy to redress the wrong.'" *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 644 (2002) (quoting *Ashton v. Brown,* 339 Md. 70, 105 (1995)).

Of import here, Article 19 is "intended to ensure 'access to courts.'" *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 407 (D. Md. 2022) (quoting *Franklin v. Mazda Motor Corp.*, 704 F. Supp. 1325, 1327 (D. Md. 1989)). "[T]he constitutional provision generally prohibits unreasonable restrictions upon traditional remedies or access to the courts . . ." *Jackson v. Dackman Co.*, 422 Md. 357, 378 (2011) (quoting *Johnson v. Maryland State Police,* 331 Md. 285, 297 (1993)).

The Supreme Court of Maryland's opinion in *Piselli v. 75th Street Medical* provides examples of application of this protection:

Where a person clearly has a right to money or property under a statute or common law principle, and no statute specifically provides for a remedy, Article 19 guarantees a common law remedy to enforce the right. *Robinson v. Bunch, supra,* 367 Md. at 444, 788 A.2d at 644. The principle that one has a Maryland constitutional right to judicial review of adjudicatory administrative decisions is based, in part, upon Article 19. *State v. Board of Education, supra,* 346 Md. at 647, 697 A.2d at 1341. *See Board of License Comm. v. Corridor,* 361 Md. 403, 415, 761 A.2d 916, 922 (2000). Article 19 ordinarily precludes retrospective legislation abrogating accrued causes of action. *Dua v. Comcast Cable, supra,* 370 Md. at 645, 805 A.2d at 1085.

Apart from these types of specific holdings with respect to Article 19, the constitutional provision generally prohibits unreasonable restrictions upon traditional remedies or access to the courts but allows the Legislature, pursuant to its authority to change the common law or statutory provisions, to enact reasonable restrictions upon traditional remedies or access to the courts. *Johnson v. Maryland State Police,* 331 Md. 285, 297, 628 A.2d 162, 168 (1993) ("Article 19 does guarantee access to the courts . . . [but] a 'statutory restriction upon access to the courts violates Article 19 only if the restriction is unreasonable,'" quoting *Murphy v. Edmonds,* 325 Md. 342, 365, 601 A.2d 102, 113 (1992)).

371 Md. 188, 205–06 (2002) (footnote omitted).

Plaintiff's Article 19 claim invokes no such circumstance. Absent any interpretive authority, Plaintiff insists Article 19 is "directly implicated" by the Complaint because "Defendants put Plaintiff in a position where he was unable to seek judicial remedy for the injuries done to his person." (ECF No. 17 at p. 13.) And, yet, Plaintiff has ably availed himself of the judicial process by filing his Complaint. *Palmer v. Maryland*, No. CV 1:22-0899-CDA, 2024 WL 4349730, at *4 (D. Md. Sept. 30, 2024) (explaining there is no "void in liability here because [Plaintiff] bring[s] claims under other laws that allow [him] to seek redressability of [his] claims against the Defendants"). Article 19 has no place in this case.

In view of the foregoing, the court will grant Correctional Officer Defendants' Motion to the extent it seeks summary judgment as to Counts I and II on the basis of the Fourth and Fourteenth Amendments, and Articles 19, 24, and 26 of the Maryland Declaration of Rights.

**B. Claims of Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment and Articles 16 and 26 of the Maryland Declaration of Rights**

*1. 42 U.S.C. § 1983*

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,'" including, relevant here, the Eighth Amendment. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n.3 (1979)). Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under section 1983, a Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

*2. Eighth Amendment and Articles 16 and 25*

"The Eighth Amendment guarantees inmates the right to be free from 'cruel and unusual punishments.'" *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) (quoting U.S. CONST. AMEND. VIII). "This prohibition 'proscribes more than physically barbarous punishments'"; "[i]t also encompasses 'the treatment a prisoner receives in prison and the conditions under which he

is confined.'"  *Scinto*, 841 F.3d at 225 (first quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976);

then quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).  It "imposes a duty on prison officials

to 'provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food,

clothing, shelter, and medical care.'"  *Scinto*, 841 F.3d at 225 (quoting *Farmer v. Brennan*, 511

U.S. 825, 832 (1994)).  As such, a "prison official's deliberate indifference to an inmate's serious

medical needs constitutes cruel and unusual punishment under the Eighth Amendment."  *Gordon*

*v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178

(4th Cir. 2014)).

Relevant here, Articles 16 and 25 of the Maryland Declaration of Rights similarly both

proscribes "cruel or unusual" pains and penalties and punishment.  Md. Const. Decl. of Rts.

Arts. 16, 25.  "Articles 16 and 25 are construed *in pari materia* with the Eighth Amendment."

*Jordan v. Davis*, No. CV ELH-22-1541, 2023 WL 2478862, at *1 n.4 (D. Md. Mar. 13, 2023); *see*

*Harris v. State*, 251 Md. App. 612, 649 n.19 (2021), *aff'd*, 479 Md. 84 (2022) ("Article[s] 16 and

25 generally are given the same interpretation as the Eighth Amendment."  (citations omitted)).

A person alleging that he has been "subjected to unconstitutional conditions of confinement

must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*."  *Scinto*, 841

F.3d at 225.  "*Farmer*'s 'objective' prong requires plaintiffs to demonstrate that 'the deprivation

alleged [was], objectively, sufficiently serious."  *Id.* (quoting *Farmer*, 511 U.S. at 834).  The

deprivation must be "'extreme'—meaning that it poses 'a serious or significant physical or

emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious

harm resulting from . . . exposure to the challenged conditions.'"  *Id.* (quoting *De'Lonta v.*

*Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)).  Further, "under *Farmer*'s 'subjective' prong,

plaintiffs must show that prison officials acted with a 'sufficiently culpable state of mind,'" which is to say, deliberate indifference. *Id.*

A showing of deliberate indifference further requires that plaintiff demonstrate that "the prison official (1) had 'actual knowledge of the risk of harm to the inmate' and (2) 'recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs.'" *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). Ultimately, a person's treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Stevens v. Holler*, 68 F.4th 921, 933 (4th Cir. 2023), *abrogation on other grounds recognized Short v. Harman*, 87 F.4th 593 (4th Cir. 2023) (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020)); *see King v. United States*, 536 F. App'x 358, 361 (4th Cir. 2013) (same).

Correctional Officer Defendants challenge Plaintiff's claims as to the second prong—that they acted with deliberate indifference. (ECF No. 13-1 at p. 9–11.) "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 211 (4th Cir. 2017) (quoting *Scinto*, 841 F.3d at 225). "Instead, deliberate indifference is most akin to criminal-law recklessness." *Pfaller*, 55 F.4th at 445 (citing *Campbell v. Florian*, 972 F.3d 385, 395 (4th Cir. 2020), *as amended* (Aug. 28, 2020)). "[S]o long as the official who knew of a substantial risk to inmate health or safety 'responded reasonably to the risk,' they cannot be found liable under the Eighth Amendment, 'even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer*, 511 U.S. at 844). Ultimately, "[i]t is not enough that the prison official *should have* recognized the risk and the inadequacy of his response. Instead, the official 'actually must

have perceived' both." *Ford v. Hooks*, 108 F.4th 224, 230 (4th Cir. 2024) (emphasis in original) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)).

A prison official "acts with deliberate indifference if he had actual knowledge of the [plaintiff's] serious medical needs and the related risks, but nevertheless disregarded them." *Gordon*, 937 F.3d at 357 (alteration in original) (quoting *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018)).   A plaintiff may demonstrate a defendant's subjective knowledge by direct evidence of his actual knowledge or by circumstantial evidence "tending to establish such knowledge, including evidence that [he] knew of a substantial risk from the very fact that the risk was obvious." *Id.* (quoting *Scinto*, 841 F.3d at 226).

"[T]he mere fact that prison officials provide some treatment does not mean they have provided '*constitutionally adequate* treatment.'"   *Heyer*, 849 F.3d at 211 (emphasis in original) (quoting *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013)); *see Gardner v. United States*, 184 F. Supp. 3d 175, 181 (D. Md. 2016) (citations omitted) (explaining that "a claim arising from substandard care may be cognizable—but only in unusual circumstances, such as where the treatment provided is 'so cursory as to amount to no treatment at all'"); *Albero v. Worcester Cnty. Bd. of Commissioners*, No. CV JKB-24-1100, 2025 WL 462588, at *15 (D. Md. Feb. 11, 2025) (same).

Relevant here, non-medical prison officials are "entitled to rely on the professional judgment of the medical personnel who were responsible for the [incarcerated person's] care."[5]

_____

[5] Plaintiff disagrees with this statement of law, citing the Supreme Court's decision in *West v. Atkins* and the Fourth Circuit's decision in *Martin v. Gentile*.  Plaintiff's disagreement is unavailing.  *West* concerns whether a medical professional's delivery of medical treatment to a plaintiff was action fairly attributable to the state such that the medical professional's conduct was under color of state law.  487 U.S. 42 (1988).  The Court explained: "The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract."  *Id.* at 56.  *Martin* does not address reliance on the assessments of contracted medical staff.  849 F.2d 863 (4th Cir. 1988).  Neither *West* nor *Martin* conflicts expressly or by implication with the law the court cites above.  To the extent *Martin* deals with a correctional officer's inaction, the court's later analysis addresses this separately.

*Gardner v. United States*, 184 F. Supp. 3d 175, 191 (D. Md. 2016) (citing cases); *see, e.g.*, *Albero v. Worcester Cnty. Bd. of Commissioners*, No. CV JKB-24-1100, 2025 WL 462588, at *15 (D. Md. Feb. 11, 2025); *Poole v. Roderick*, No. CV DKC-22-2233, 2023 WL 5234970, at *15 (D. Md. Aug. 15, 2023); *Hendrick v. Booth*, No. CV TDC-14-4021, 2015 WL 8055172, at *6 n.3 (D. Md. Dec. 3, 2015), *aff'd*, 654 F. App'x 136 (4th Cir. 2016); *Mullins v. Clear*, No. 7:21-CV-00008, 2021 WL 5299665, at *5 (W.D. Va. Nov. 15, 2021); *Krug v. Loranth*, No. 1:13-CV-01409-DCN, 2014 WL 4955365, at *7 (D.S.C. Sept. 29, 2014), *aff'd*, 599 F. App'x 512 (4th Cir. 2015).

A correctional officer's reliance on a medical professional's judgment is, of course, not without limit. This court's opinion in *Valentine v. PrimeCare Med., Inc.*, 697 F. Supp. 3d 431 (D. Md. 2023), provides clarity:

> The County and Sheriff argue that their employees and subordinates were not deliberately indifferent because they were entitled to rely on the medical advice of PrimeCare's nurses. This argument in unavailing given the allegations. It is true that "the fact that a trained medical technician did not recognize [a] risk . . . strongly suggests that the risk was something less than obvious." *Parrish*, 372 F.3d at 306. But Plaintiffs allege that Ms. Valentine was never examined by any of the medical staff. Without an examination, there can be no medical opinion to rely on. *See Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) ("This case is further distinguishable from the precedent on which the officers seek to rely because it is undisputed that [the detainee] received *no* medical treatment whatsoever. There was therefore *no* medical opinion to which the officers could have deferred.")
>
> Further, Ms. Valentine (and eventually J.R.B.) were in the County's custody and its deputies had the ultimate responsibility to ensure that the Plaintiffs received constitutionally adequate medical care. Their failure to investigate cries for help and obvious disregard from PrimeCare staff does not fulfill that responsibility. *See Id.* ("This case does not, however, present a situation in which prison officials might be held liable for the actions or inactions of a medical professional. The officers face liability for *their own* decisions, made while [the detainee] was in their charge."); *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) ("[E]ven a guard able to prove that he was in fact oblivious to an obvious injury of

sufficient seriousness may not escape liability if it is shown, for
example, that he . . . 'declined to confirm inferences of risk that he
strongly suspected to exist.'") (quoting *Farmer*, 511 U.S. at 843 n.
8, 114 S.Ct. 1970).

The cases the County and Sheriff cite in support of this argument
are inapposite. In *Miltier*, "no record evidence suggest[ed] why the
wardens should not have been entitled to rely upon their health care
providers' expertise." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.
1990). By contrast, Plaintiffs have alleged that Ms. Valentine's
condition (late pregnancy) was obvious to those around her, that she
repeatedly told non-medical staff that she was in labor, and that she
*was never examined by any medical staff.* If proven, each of these
allegations lend support to the assertion that the deputies were not
entitled to rely on the nurses' assessments. Correctional staff are not
entitled to rely on medical judgments from individuals who do not
have direct knowledge of the circumstances of the patient.

*Id.* at 444–45 (emphasis in original) (record citations omitted).

The question here is whether there exists a genuine dispute of material fact as to whether
Correctional Officer Defendants acted with deliberate indifference to Plaintiff's serious medical
need. Based upon the undisputed facts (set forth above), which are supported by Plaintiff's
allegations, the answer is no – there is no dispute of fact and the facts entitle movants to judgment
in their favor. The undisputed facts here bear no relevant likeness to those in *Valentine*, where the
plaintiffs alleged "Ms. Valentine was never examined by any of the medical staff," and which
directly informed the court's determination that "[c]orrectional staff are not entitled to rely on
medical judgments from individuals who do not have direct knowledge of the circumstances of
the patient." *Id.*

Plaintiff does not contest that he was screened according to QACDC policy, immediately
placed on an Alcohol Withdrawal protocol, and seen by QHCPs on at least a daily basis during his
confinement. (ECF No. 1 ¶¶ 62, 66–69, 77, 82, 85; Wellpath Receiving Screening, ECF No. 13-
6; Detox Protocol Order, ECF No. 13-7 at p. 3; Security Check Sheet, ECF No. 13-8; Matter of

Record, ECF No. 13-9; QACDC Medical Policies and Procedures, ECF No. 13-10 at p. 2.)  It is also undisputed that Correctional Officer Defendants – over the course of three days – observed Plaintiff on regular intervals ranging from one hour (when Plaintiff was at his best) to 15 minutes or less (when Plaintiff was at his worse).  (ECF No. 1 ¶¶  78, 83; Security Check Sheet, ECF No. 13-8; Matter of Record, ECF No. 13-9.)  It is undisputed that when Defendant Andrew determined Plaintiff's condition had deteriorated, he waited for the QHCP (due to arrive shortly), and, at that time, Plaintiff was responsive to questions and generally speaking.  (Matter of Record, ECF No. 13-9; ECF No. 1 ¶ 87.)  These undisputed facts do not support a reasonable conclusion that Andrew had constructive or actual knowledge of Plaintiff's serious medical need and disregarded it.  *See Gordon*, 937 F.3d at 357, *supra*.

It is further undisputed that, upon arrival of the QHCP, she determined and advised Andrew that diabetic inmates took medical priority at that time.  (Matter of Record, ECF No. 13-9.)  As this court has recognized, "the fact that a trained medical technician did not recognize [a] risk . . . strongly suggests that the risk was something less than obvious." *See Valentine*, 697 F. Supp. 3d at 444 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 306 (4th Cir. 2004)).  Ultimately, upon determining Plaintiff's condition had worsened, Correctional Officer Defendants shortened their observation intervals, physically intervened and tended to him to ensure his safety, and called several times for (more) prompt medical assistance.  (ECF No. 1 ¶¶ 88–89; Security Check Sheet, ECF No. 13-8; Matter of Record, ECF No. 13-9.)

The undisputed facts do not generate a triable issue on this portion of Plaintiff's Complaint, which is to say no reasonable fact finder could conclude that Correctional Officer Defendants' actions or inactions were "so grossly incompetent, inadequate or excessive as to shock the

23

conscience or to be intolerable to fundamental fairness."[6] *Stevens*, 68 F.4th at 933, *supra*.  The court will therefore grant the Motion to the extent it seeks summary judgment on Plaintiff's claim of violation of 42 U.S.C. § 1983 based upon inadequate medical care under the Eighth Amendment and the corresponding Articles 16 and 25 claims.[7]

### C. Gross Negligence

Plaintiff avers that Defendants "acted with gross negligence and/or malice by intentionally and knowingly failing to provide Mr. Jones with proper medical care, proper supervision, and proper safety precautions."  (ECF No. 1 ¶ 181.)  Correctional Officer Defendants argue that Plaintiff's allegations establish that they appropriately intervened in responding to Plaintiff's medical need and that they were entitled to rely on the repeated opinions of the medical staff.[8]

---

[6] Plaintiff asserts that there are "material facts in dispute" on this point. (ECF No. 17 at p. 11–12, 17.)  Specifically, he avers that there is a dispute as to whether Correctional Officer Defendants 'faithfully executed . . . their duties to" Plaintiff. (ECF No. 17 at p. 11.)  Plaintiff's contention that this is a disputed "fact" is more aptly regarded as a disputed legal conclusion; the facts upon which the court bases its decision herein are not in dispute; and Plaintiff does not assert additional discovery is necessary.  Plaintiff also asserts that Correctional Officer Defendants "are entirely silent as to how [Plaintiff's] entirely preventable symptoms continued to worsen" to such a serious point. *Id.*  While Correctional Officer Defendants bear the burden of demonstrating that summary judgment is appropriate, Plaintiff must present more than his own "unsupported speculation" or allegations to survive summary judgment. *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023).  Finally, Plaintiff asserts that there is a "dispute" as to precisely when Plaintiff first received medical attention. (ECF No. 17 at p. 12.)  This position is unsupported by his allegations and the corresponding exhibits which are in near complete agreement.  Plaintiff's contention (especially following his request that the court convert the Motion to a Rule 56 motion, and his failure to state by Rule 56 affidavit or otherwise that discovery is required to address the Motion) that he does not know the exact time Plaintiff first received medical attention does not generate a genuine dispute of material fact.  And unsupported assertions of nominal timing discrepancies, even if true, likewise do not generate a genuine dispute of material fact.

[7] Correctional Officer Defendants also contend that, even if the court concludes that they did deprive Plaintiff of adequate medical care, they are shielded from liability by the doctrine of qualified immunity. (ECF No. 13-1 at p. 11.)  "When presented with a section 1983 claim to which qualified immunity has been asserted as a defense, a court must first determine whether the plaintiff has alleged the deprivation of a constitutional right.  Only if a constitutional claim has been alleged should we proceed to the determination of whether qualified immunity shields the defendant from liability." *Young v. City of Mount Ranier*, 238 F.3d 567, 574 (4th Cir. 2001), *abrogation on other grounds recognized by Short v. Hartman*, 87 F.4th 593, 609 (4th Cir. 2023); *see Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 160 n.8 (D. Md. 2023) (same).  Because the court concludes that Correctional Officer Defendants are entitled to summary judgment as to Plaintiff's § 1983 claim on the basis of an Eighth Amendment violation, the court does not address application of qualified immunity.

[8] Correctional Officer Defendants also argue that Plaintiff fails to allege a breach of duty.  The court does not construe Plaintiff's claims regarding establishment of policies as directed against Correctional Officer Defendants because there is no allegation or evidence that suggests they had such authority or, in fact, made policies. (ECF No. 1 ¶ 180; ECF No. 13-1 at p. 15.)

(ECF No. 13-1 at p. 14–16.)

Gross negligence "is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Anne Arundel Cnty. v. Reeves*, 474 Md. 46, 73 (2021). While "a fine line exists between allegations of negligence and gross negligence," *see Stracke v. Est. of Butler*, 465 Md. 407, 420 (2019) (citation omitted), gross negligence is "something *more* than simple negligence, and likely more akin to reckless conduct." *Reeves*, 474 Md. at 73 (emphasis in original) (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)). "Gross negligence, like deliberate indifference, is rooted in intentionality." *Walker v. Heavener*, No. CV JKB-16-3136, 2019 WL 3017658, at *7 (D. Md. July 10, 2019). Ultimately, "[a] wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Stracke*, 465 Md. at 421 (quoting *Barbre*, 402 Md. at 187). "Hindsight is 20/20," the court explained. *Id.* at 426. A "well-intended error" in judgment is not the same as "wanton and reckless disregard" for life. *See id.* (quoting *McCoy v. Hatmaker*, 135 Md. App. 693, 713 (2000)).

Maryland courts "have made clear that a claim for gross negligence 'sets the evidentiary hurdle at a higher elevation[.]'" *Id.* at 421 (quoting *Beall v. Holloway-Johnson*, 446 Md. 48, 64 (2016)). "[W]hether or not gross negligence exists necessarily depends on facts and circumstances in each case." *Bailey v. City of Annapolis*, 252 Md. App. 83, 104 (2021). "Gross negligence is a question of law 'when reasonable [people] could not differ as to the rational conclusion to be reached.'" *Stracke*, 465 Md. at 420 (quoting *Romanesk v. Rose*, 248 Md. 420, 423 (1968)). Recent caselaw has rejected "the notion that 'ordinary negligence will frequently be enough to create a

jury question of whether such negligence was or was not gross.'" *Bailey*, 252 Md. App. at 106–07 (quoting *Stracke*, 465 Md. at 421).

Based on the undisputed facts, Plaintiff fails to generate a triable issue as to his claim of gross negligence. As discussed at length above, Correctional Officer Defendants screened Plaintiff as to his medical needs and regularly monitored him, ensuring regular access to medical care.[9] Based on the undisputed facts, no reasonable finder of fact could conclude that Correctional Officer Defendants demonstrated negligence with "intentionality" or utter indifference to Plaintiff's medical needs. *See Walker*, 2019 WL 3017658, at *7 and *Stracke*, 465 Md. at 421, *supra*. To the extent Correctional Officer Defendants' judgment may have been in error (which the court does not find), the facts do not support a conclusion that such error was rooted in a "wanton and reckless disregard" for life. *Stracke*, 465 Md. at 421, *supra*.

Plaintiff further asserts there are genuine disputes of material fact on this point. (ECF No. 17 at p. 22–23.) But, in the view of the court, that is incorrect. The court is unable to discern or identify even one such dispute, including as to whether providing Plaintiff medical care was "contrary to the orders" of the QHCP. *Id.* at p. 22. Plaintiff contends that whether Correctional Officer Defendants' efforts were sufficient intervention is a question of fact. *Id.* at p. 23. Whether the sufficiency of their intervention constitutes gross negligence is a question of law "when reasonable [people] could not differ as to the rational conclusion to be reached.'" *See Stracke*, 465 Md. at 420, *supra*. The court concludes that is the case here for the reasons set forth above. Plaintiff may not rely on his own unsupported assertion to survive summary judgment. *See Robinson*, 70 F.4th at 780, *supra*.

---

[9] Plaintiff contends that Correctional Officer Defendants watched Plaintiff deteriorate and "did absolutely nothing" to get him adequate medical care. (ECF No. 17 at p. 20; ECF No. 1 ¶ 176.) Plaintiff's allegation and protestations of counsel are directly contradicted by the undisputed facts that Correctional Officer Defendants engaged in on-going monitoring, requests for medical assistance, and hands-on intervention measures.

Consistent with the foregoing, the court will grant Correctional Officer Defendants' Motion to the extent it seeks summary judgment on Plaintiff's Count IV.

### D. Counts III, V, and VI, : Negligence, Negligent Training, and Negligent Supervision[10]

Correctional Officer Defendants assert that Plaintiff's claims of negligence, negligent training, and negligence supervision all fail because Plaintiff's allegations are insufficient to establish a breach of duty (as to his negligence claim) and because Plaintiff fails to allege facts to show that any Correctional Officer Defendant was incompetent, that Defendant Andrew or Edwards had constructive and/or actual knowledge of that incompetence, that an act or omission of Correctional Officer Defendants caused Plaintiff's injuries, and that negligent training and supervision caused Plaintiff's injuries.[11]  (ECF No. 13-1 at p. 13–16, 20–22.)  They alternatively argue that, even if Plaintiff's negligence claims are sufficient, they are protected by the doctrine of public official immunity.  *Id.* at p. 16–19, 22.[12]

#### 1. Public Official Immunity

Correctional Officer Defendants assert that they are immune under common law and statutory doctrines of public official immunity as to Plaintiff's claims of negligence, negligent training, and negligent supervision. (ECF No. 13-1 at p. 16–20, 22.)  "Maryland courts have long recognized the common law doctrine of public official immunity."  *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 297 (D. Md. 2020).  Similarly, Maryland statutory law provides: "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the

---

[10] While the court refers collectively to the "Correctional Officers Defendants" in addressing these counts, Counts V and VI are asserted solely against, relevant here, Andrew and Edwards.

[11] Correctional Officers Defendants also argue that Defendants Andrew and Edwards did not have authority over subordinate employees. (ECF No. 13-1 at p. 20.)  As Plaintiff argues, this assertion is unsupported by any evidence or attestation; the court therefore declines to consider the argument.

[12] Because the court concludes that public official immunity bars Plaintiff's negligence claims, it does not address Correctional Officer Defendants' other arguments.  The court does note, however, that with the exception of the threshold question of duty, "[w]hether a plaintiff has presented sufficient evidence of the elements of negligence is generally a question for the fact finder."  *Corinaldi v. Columbia Courtyard, Inc.*, 162 Md. App. 207, 218 (2005).

scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action."  MD. CODE ANN., CTS. & JUD. PROC. § 5-507(a)(1).  "Section 5-507 'is merely a codification of existing common law public official immunity.'"  *Meyler v. Mayor & City Council of Ocean City*, 736 F. Supp. 3d 272, 284–85 (D. Md. 2024) (quoting  *Fletcher v. Prince George's Cnty.*, 2017 WL 3302405, at *8 n.14 (Md. Ct. Spec. App. Aug. 3, 2017)).  In view of the facts in this case as asserted, the court considers these immunities together.

The doctrine of public official immunity is "quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct."  *Lee v. Cline*, 384 Md. 245, 258–60 (2004) (citing cases); *see Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 331 (2001) (finding that a public official was entitled to "liability arising out of actions or omissions pertaining to hiring, training, and supervising").  Maryland's "common law qualified immunity in tort suits, for public *officials* performing *discretionary* acts, has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called 'intentional torts.'"  *Lee*, 384 Md. at 258 (emphasis in original); *see Cooper v. Rodriguez*, 443 Md. 680, 713 (2015) ("Common law public official immunity applies to public officials (as opposed to mere employees) who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties." (footnote and citation omitted)).  "[T]hree prongs . . . must be satisfied in order for a government representative to qualify for immunity: (1) he or she must be a *public official;* and (2) his or her tortious conduct must have occurred while performing *discretionary* acts in furtherance of official duties; and (3) the acts must be done without malice."  *Williams v. Mayor & City Council of Baltimore*, 359 Md. 101, 140–41 (2000) (emphasis in

original) (footnote omitted).  The first prong is plainly met here because "correctional officers are public officials."  *Cooper*, 443 Md. at 713 n.13 (citing cases).

As to the second prong, Maryland courts have explained that "discretion is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience and uncontrolled by the judgment or conscience of others." *Cooper*, 443 Md. at 713 (citation omitted).  In contrast, "[m]inisterial duties are those to which nothing is left to the official's discretion . . . ." *Rodriguez v. State*, 218 Md. App. 573, 616 (2014), *aff'd but criticized sub nom. Cooper v. Rodriguez*, 443 Md. 680 (2015) (citing *State ex rel. Clark v. Ferling,* 220 Md. 109, 113 (1959)).  Police officers acting "within the scope of their law enforcement function . . . are clearly acting in a discretionary capacity." *Robinson v. Bd. of Cnty. Comm'rs for Prince George's Cnty.*, 262 Md. 342, 347 (1971); *see Johnson*, 452 F. Supp. 3d at 298 (same); *Cooper v. Doyle*, No. CV DKC 22-0052, 2022 WL 16923857, at *3 (D. Md. Nov. 14, 2022) (same).

Applicable here, the *Cooper* court held that "there [could] be no reasonable dispute that, at the time of the incident, [the defendant officer] was a public official, acting within the scope of his employment, and that he was authorized to use his discretion in the furtherance of his employment" where the defendant officer was a correctional officer, and specifically the "officer in charge" while an incarcerated individual was killed during transport. *Cooper*, 443 Md. at 714.  This court has recognized that correctional officers perform "discretionary acts in furtherance of their duties" when they "exercised[]their personal judgment" in responding to a plaintiff's medical emergency. *Rodwell v. Wicomico Cnty., Maryland*, No. CV DKC 22-3014, 2024 WL 1178202, at *6 (D. Md. Mar. 19, 2024).  Similarly, duties related to hiring, retaining, training, and supervising employees have traditionally been recognized as "discretionary." *Cherkes*, 140 Md. App. at 329; *see Cullen*

*v. Somerset Cnty.*, No. CIV.A. WMN-10-0055, 2010 WL 2132794, at *7 (D. Md. May 25, 2010) (explaining that "hiring and supervision are unquestionably discretionary duties").  In view of Plaintiff's claim, this prong is similarly satisfied.

Finally, as to the third prong, public official immunity is "defeated" if the official acts with malice, gross negligence, or commits an intentional or state constitutional tort.  *Johnson*, 452 F. Supp. 3d at 297–98 (citations omitted). For the reasons expressed at length above, there is no genuine dispute of material fact that Correctional Officer Defendants did not act with gross negligence or commit a state constitutional tort.[13]  *Cf. Stracke v. Est. of Butler*, 465 Md. 407, 421– 22 (2019) (explaining that if the court were to permit a jury to consider gross negligence "in almost all instances where a plaintiff can prove negligence," then public officials would be "stripped of the protective shield that the immunity [under the Fire and Rescue Company Act] was intended to provide, forcing them to go through the entire litigation process when there is only evidence of simple negligence" and recognizing that this "result runs contrary to the heightened threshold of gross negligence we have articulated").  The remaining question, then, is whether any genuine dispute exists that Correctional Officer Defendants acted with malice.

"Actual malice is established by proof that the defendant-officer intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Johnson*, 452 F. Supp. 3d at 298 (quoting *Bord v. Baltimore County*, 220 Md. App. 529, 557 (2014)); *see Hines v. French*, 157 Md. App. 536, 563 (2004) (same).   "Actual malice does not always have to be shown with specificity; it can be inferred."  *Thacker v. City of Hyattsville*, 135 Md. App. 268, 307 (2000) (quoting *Leese v. Baltimore Cnty.*, 64 Md. App. 442, 480 (1985), *disapproved of on other grounds*

---

[13] In view of the court's analysis as to Plaintiff's federal and state constitutional claims, his arguments as to public immunity regarding same are unavailing.

*by Harford Cnty. v. Town of Bel Air*, 348 Md. 363 (1998)).  A plaintiff, however, "cannot rely on bare allegations that a particular act raises an inference of malice."  *Rodwell v. Wicomico Cnty., Maryland*, No. CV DKC 22-3014, 2024 WL 1178202, at *6 (D. Md. Mar. 19, 2024) (quoting *Koon as next friend of Glay v. Prince George's Cnty., MD*, No. 17-cv-2799-DKC, 2019 WL 1317401, at *7 (D. Md. Mar. 22, 2019)).  Maryland courts reject "attempts to rely on bare allegations that a particular act raises an inference of malice."  *Hines*, 157 Md. App. at 563 (citation omitted).  As such, a plaintiff "must point to specific evidence that raises an inference that defendant's actions were improperly motivated" to defeat a motion for summary judgment; he "may not rely on the 'mere existence of such an intent, motive, or state of mind issue . . . .'"  *Id.* (quoting *Thacker,* 135 Md. App. at 301; *see Rodwell*, 2024 WL 1178202, at *6 (same).

Plaintiff makes conclusory allegations that Correctional Officer Defendants acted with malice in failing to address his serious medical needs, but offers no admissible evidence to support that claim.  (ECF No. 1 ¶¶ 173, 181, 182, 184.)  "Bare allegations" are insufficient to raise an inference of malice.  *See Hines*, 157 Md. App. at 563, *supra*.  And, as said earlier, Plaintiff makes no request or claim for additional discovery to oppose the Motion.  Indeed, as discussed above, neither Plaintiff's allegations nor the undisputed evidence demonstrates (with specificity or by inference) that Correctional Officer Defendants had "an evil or rancorous motive influenced by hate" with a purpose of "deliberately and willfully" injuring Plaintiff.  *See Johnson*, 452 F. Supp. 3d at 298, *supra*.  To the contrary, Correctional Officer Defendants' undisputed actions run counter to such an inference.  No reasonable factfinder could conclude, upon the undisputed facts at issue here, that Correctional Officer Defendants acted with malice in their response to Plaintiff's medical needs.

All elements of public official immunity are met. Therefore, Correctional Officer Defendants are entitled to summary judgment on Plaintiff's claims of negligence, negligent training, and negligent supervision (Counts III, V, and VI) on the basis of public official immunity.

**V.    <u>CONCLUSION</u>**

For the reasons set forth herein, by separate order, the Motion shall be granted.


Date:  <u>March 7, 2025</u>                           /s/_____
                                                   Julie R. Rubin
                                                   United States District Judge

32