IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD JONES,

*Plaintiff*,

v.

QUEEN ANNE'S COUNTY, MARYLAND, *et al.*,

*Defendants*.

Civil No.: 1:24-cv-01333-JRR

## MEMORANDUM OPINION

Pending before the court is Defendant Queen Anne's County and Warden Lamonte Cooke's ("County Defendants") Motion to Dismiss or, in the Alternative, for Summary Judgment or, in the Alternative, Motion to Bifurcate. (ECF No. 29; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss, will be granted.

## I.    BACKGROUND

Plaintiff Donald Jones initiated this action based upon injuries he suffered while detained at the Queen Anne's County Detention Center ("QACDC"), operated by Queen Anne's County, Maryland (the "County"). (ECF No. 1 ¶¶ 1, 13.) Defendant Cooke, sued in his official capacity,[1]

---

[1] Plaintiff's Complaint, as drafted by his counsel, brings this action against Defendant Cooke solely "in his official capacity." (ECF No. 1 at p. 1.) *See Stewart v. Nottoway Cnty.*, 684 F. Supp. 3d 467, 478 (E.D. Va. 2023) (noting that "[w]hether a plaintiff has named a defendant in his official or personal capacity is generally determined by examining 'the face of the complaint'") (quoting *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 126 F.3d 589, 609 (4th Cir. 1997)). Plaintiff has not expressly asserted otherwise, either by amendment or by argument. As such, the court does not construe the Complaint to assert claims against Defendant Cooke in his individual capacity. *Cf. Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) (discussing considerations where a plaintiff "does not allege capacity specifically"). In the context of § 1983, official capacity suits are treated as suits against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n.55 (1978)); *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 469 (4th Cir. 2013). This distinction is not material here as to Plaintiff's state law claims. *See Ritchie v. Donnelly*, 324 Md. 344, 375 (1991) (holding that

serves as the Director of the Department of Public Safety Corrections and Warden/Director of QACDC. *Id.* ¶ 14.

As explained in the court's memorandum opinion at ECF No. 24, on May 20, 2021, Plaintiff Donald Jones was sentenced to 60 days of incarceration at QACDC, with all but ten (10) days suspended. (ECF No. 1 ¶ 2.) He arrived at QACDC that same day. *Id.* ¶ 65. Upon his arrival, Officer Larry E. Hinch completed an Inmate Medical Intake Form that indicated Plaintiff suffered from "COPD" and "asthma." *Id.* ¶ 66. Officer Hinch also completed Plaintiff's Mental Health Screening Form; the form detailed that Plaintiff used alcohol every day and that his last use was on May 19, 2021. *Id.* ¶ 67. Following these intake and screening processes, due to his medical needs, Plaintiff was placed in administrative segregation on the "Detox Unit." *Id.* ¶ 4.

Over the course of the next five days, Plaintiff's condition deteriorated due to alcohol withdraw. (ECF No. 1 ¶¶ 5, 71–98.) Following a series of actions by Correctional Officer Defendants,[2] in consultation with the Qualified Health Care Professionals ("QHCPs"), Plaintiff was finally transported to the hospital on May 24, 2021, at 7:13 a.m. *Id.* ¶ 97. Ultimately, Plaintiff experienced a number of health issues. *Id.* ¶¶ 99–100. He was hospitalized "for months" following the incident; upon discharge, he continued care at a "nursing home" and, thereafter, received home healthcare as needed. *Id.* ¶¶ 100–102.

Generally, Plaintiff alleges:

> 1. This action is brought by [Plaintiff] as a result of the preventable and tragic injuries he suffered while he was a detainee in the custody of the [County] at [QACDC].

---

"[s]tate law does not allow . . . bifurcation" of state constitutional and intentional tort claims as to official and individual capacities); *Graham v. Maryland*, 738 F. Supp. 3d 644, 657 (D. Md. 2024) (discussing same).

[2] As set forth in its memorandum opinion at ECF No. 24, "Correctional Officer Defendants" refers to Defendants Sergeant Daniel Andrew, Sergeant Heather Edwards, Officer Christopher Barnett, Officer Carla Patterson, Officer Linda Roark, Officer Larry E. Hinch, and Officer Travis Horney. By order at ECF No. 25, the court entered summary judgment in favor of Correctional Officer Defendants and against Plaintiff.

2. On May 20, 2021, Mr. Jones was sentenced to serve ten (10) days of incarceration at [QACDC] for driving without a license.

3. Upon arrival at [QACDC], it was determined through the [QACDC's] intake screening process that Mr. Jones was suffering from some serious physical and mental health issues. The staff was also aware that Mr. Jones had previously suffered severe withdrawals in the recent past.

4. While Mr. Jones was placed into administrative custody, namely the Detox Unit, due to his medical and mental issues and inability to adapt to a dormitory or cell setting, it was immediately clear that Mr. Jones was experiencing alcohol withdrawal.

5. In an extreme display of indifference to human life, over the course of the following five days, the [QACDC] employees idly stood by and watched as Mr. Jones decompensated, and they failed to give him the necessary medical care that Mr. Jones had the constitutional right to.

6. Mr. Jones' injuries were caused by the deliberate indifference, unreasonableness, and negligence or gross negligence of the correctional staff at the [QACDC] employed by [the County].

7. As a result of the Defendants' negligent and grossly negligent acts, Mr. Jones is left with permanent damages.

*Id.* ¶¶ 1–7.

With regard to Defendant Cooke, Plaintiff specifically alleges:

Defendant Cooke had the capacity and authority to hire, fire, and supervise final policymakers, including all individually named Defendants herein. As the managing official of the Detention Center, Defendant Cooke was responsible for the safekeeping and care of each inmate or other individual detained in or sentenced to the correctional facility from the time the inmate or individual was lawfully detained in or committed to the local correctional facility until discharged, released, or withdrawn under a court order or other lawful authority.

(ECF No. 1 ¶ 14.)  Plaintiff does not allege any specific involvement by Defendant Cooke in the

County's response to his medical needs, and instead focuses his allegations on Defendant Cooke's

3

various obligations, including to ensure persons involved in classification and special confinement

processes were familiar with the applicable policies and procedures. *Id.* ¶¶ 37–39, 45–46.

Plaintiff initiated this action on May 7, 2024, asserting the following counts:

> Count I: Violation of Fourth, Eighth, and Fourteenth Amendment under 42 U.S.C. § 1983 based upon Denial of Adequate Medical Care;
>
> Count II: Violation of Articles 16, 19, 24, 25, and 26 of the Maryland Declaration of Rights based upon Denial of Adequate Medical Care;
>
> Count III: Negligence;
>
> Count IV: Gross Negligence;
>
> Count V: Negligent Training;
>
> Count VI: Negligent Supervision; and
>
> Count VII: *Monell*[3] Claim based upon violation of the Fourth Amendment under 41 U.S.C. § 1983.

(ECF No. 1 ¶¶ 122–229.)

In response, County Defendants filed a motion to dismiss or, in the alternative, motion to

bifurcate and stay discovery (ECF No. 12); and Correctional Officer Defendants filed a motion to

dismiss or, in the alternative, motion for summary judgment (ECF No. 13).  Following briefing on

both, as mentioned in footnote 2, *supra*, the court granted Correctional Officer Defendants'

motion, construed as one for summary judgment with Plaintiff's consent, and entered judgment

for Correctional Officer Defendants on all counts against them.  (ECF No. 24.)

In its opinion, the court reached a number of conclusions that are material to resolution of

the instant Motion, including, *inter alia*, that the undisputed facts did not support that 1)

---

[3] In *Monell v. Department of Social Services*, the Supreme Court explained that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  436 U.S. 658, 694 (1978).

Correctional Officer Defendants had violated Plaintiff's rights under the U.S. Constitution or the Maryland Declaration of Rights; 2) that Correctional Officer Defendants did not act with gross negligence; and 3) that, relatedly, Correctional Officer Defendants were entitled to public official immunity with respect to Plaintiff's remaining negligence claims. Because of the material effect of the court's entry of judgment in favor of Correctional Officer Defendants, the court denied as administratively moot County Defendants' motion and directed them to submit a revised motion. (ECF No. 26.) Thereafter, on April 11, 2025, County Defendants filed the instant Motion seeking dismissal of, or alternatively summary judgment on, all claims. (ECF No. 29.)

## II.    LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(d)

County Defendants bring their Motion as a motion to dismiss or, alternatively, for summary judgment. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Hayes v. Maryland Transit Admin.*, 708 F. Supp. 3d 683, 688 (D. Md. 2023), *aff'd,* No. 24-1482, 2024 WL 4262786 (4th Cir. Sept. 23, 2024) (quoting *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022)). Federal Rule of Civil Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

"A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it'"; such discretion "should be exercised with great caution and attention to the parties' procedural rights." *Sammons v. McCarthy*, 606 F. Supp. 3d 165, 193 (D. Md. 2022) (quoting 5C WRIGHT &

MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018)); *see Sol v. M&T Bank*, 713 F. Supp. 3d 89, 99–100 (D. Md. 2024) (same).  "In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Sammons*, 606 F. Supp. 3d at 193 (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder v. Maryland Dep't of Transportation*, No. CV CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).  Where a movant expressly captions a motion as one for summary judgment "in the alternative," the non-movant is "on notice that this motion might be treated as one for summary judgment"; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

"Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol*, 713 F. Supp. 3d at 100 (citing *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542–43 (D. Md. 2012)).  Even where a party fails to file an affidavit, "a district court abuses its discretion by granting summary judgment when it

6

otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (quoting *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)).

The nonmovant may not, however, "complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see Shaw*, 59 F.4th at 128 (same).   A non-movant "may not demand discovery for discovery's sake; a Rule 56(d) request is properly denied 'where the additional evidence sought . . . would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Gardner v. United States*, 184 F. Supp. 3d 175, 181–82 (D. Md. 2016) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995)).

The procedural history in this case presents an unusual circumstance.   No discovery has yet occurred and Plaintiff has submitted a Rule 56(d) affidavit in which he urges that discovery is needed to establish disputes of fact as to "[t]he actual knowledge and deliberate indifference of the individual Defendants," "[t]he County's failure to train or supervise staff in accordance with Monell standards," and "[t]he existence of systemic deficiencies supporting the Plaintiff's federal and state claims."   (Greenberg Aff., ECF No. 30-1 ¶ 7.)   Notably, however, Plaintiff previously consented to the court's conversion of Correctional Officer Defendants' motion to one for summary judgment, and, on the motion presented, the court entered judgment in favor of Correctional Officer Defendants on all counts against them.   Against this backdrop, the court harbors considerable doubt as to whether Plaintiff's asserted need for discovery would generate

genuine disputes of material fact; nonetheless, the court declines to convert the Motion.  In any event, as explained below, the court is persuaded that 12(b)(6) dismissal is warranted.

### B.  Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint."  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'"  *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible."  *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570).  The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully."  *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)).  Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient.  *Twombly*, 550 U.S. at 555.

III.    **ANALYSIS**

A. **Counts I and II as to the Fourth and Fourteenth Amendments of the U.S. Constitution, and Articles 19, 24, and 26 of the Maryland Declaration of Rights**

The court's memorandum opinion at ECF No. 24, pages 10 through 17, discussed at length the unsuitability of Plaintiff's claims under the Fourth and Fourteenth Amendments, their counterparts in Articles 26 and 24 of the Maryland Declaration of Rights, and under Article 19 of the Maryland Declaration of Rights. The court incorporates that analysis here. As the court previously opined, Plaintiff's claims—rooted in the denial of adequate medical care while he was detained post-conviction, are properly analyzed under the Eighth Amendment of the U.S. Constitution and its Maryland counterparts in Articles 16 and 25. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (explaining that "[c]laims that prison officials failed to provide adequate medical care to an inmate, like excessive force claims, sound in the Eighth Amendment") (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). The court will therefore grant the Motion to the extent it seeks dismissal with prejudice of Plaintiff's Counts I and II to the extent they are based on the Fourth and Fourteenth Amendments, and Articles 19, 24, and 26.

B. **Counts I, II, and VII as to Claims of Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment of the U.S. Constitution, and Articles 16 and 25 of the Maryland Declaration of Rights and the Related *Monell* Claim**

The court thus turns to Plaintiff's claims of deliberate indifference to his serious medical needs brought under the Eighth Amendment (and Articles 16 and 25), as well as his related *Monell* claim asserted under § 1983.[4] As this court previously explained, "[t]he Eighth Amendment

---

[4] Because Plaintiff's Count VII brings a *Monell* claim specifically under the Fourth Amendment, County Defendants seek dismissal consistent with the court's previous finding that the Fourth Amendment is an inappropriate vehicle for his recovery. A *Monell* claim based on the Fourth Amendment would similarly be subject to dismissal for the reasons set forth above. But consistent with this court's earlier opinion, and drawing all reasonable inferences in Plaintiff's favor, the court construes Plaintiff's *Monell* claim to be based on the alleged violation of the Eighth Amendment.

guarantees inmates the right to be free from 'cruel and unusual punishments.'"[5] *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) (quoting U.S. CONST. AMEND. VIII). "This prohibition 'proscribes more than physically barbarous punishments'"; "[i]t also encompasses 'the treatment a prisoner receives in prison and the conditions under which he is confined.'" *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (first quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976); then quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). It "imposes a duty on prison officials to 'provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). As such, a "prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).

The court has already concluded that Correctional Officer Defendants, the individual actors at issue, did not act with deliberate indifference to Plaintiff's medical needs. In the absence of an underlying constitutional violation by the individual actors, Plaintiff's official-capacity action against Defendants the County and Cooke similarly fail. As the court explained, § 1983 "provides 'a method for vindicating federal rights elsewhere conferred,'" including, relevant here, the Eighth Amendment. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n.3 (1979)). To state a claim under § 1983, a Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

---

[5] Articles 16 and 25 of the Maryland Declaration of Rights similarly both proscribe "cruel or unusual" "pains and penalties" and "punishment." MD. CONST. DECL. OF RTS. ARTS. 16, 25. "Articles 16 and 25 are construed *in pari materia* with the Eighth Amendment." *Jordan v. Davis*, No. CV ELH-22-1541, 2023 WL 2478862, at *1 n.4 (D. Md. Mar. 13, 2023); *see Harris v. State*, 251 Md. App. 612, 649 n.19 (2021), *aff'd,* 479 Md. 84 (2022) ("Article[s] 16 and 25 generally are given the same interpretation as the Eighth Amendment." (citations omitted)).

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

In official-capacity action, "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Graham*, 473 U.S. at 166 (quoting *Polk County v. Dodson,* 454 U.S. 312, 326 (1981)); *see King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016) (same). Under *Monell v. Department of Social Services*, "[l]ocal governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief, where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). In asserting a *Monell* claim, a plaintiff must "adequately plead . . . the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Such claims consist of two components: "(1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 554 (D. Md. 2021) (citing *Bd. of Comm'rs of Bryan Cnty., v. Brown*, 520 U.S. 397, 403 (1997)).

Thus, to prevail in his official-capacity claims, Plaintiff must show a constitutional violation by the individual municipal actors at issue (here, Correctional Officer Defendants), even if the individual municipal actors need not necessarily be liable. *See e.g.*, *Balogh v. Virginia*, 120 F.4th 127, 138 (4th Cir. 2024), *cert. denied sub nom.*, 145 S. Ct. 1902 (2025) (noting that a *Monell* claim "requires an underlying constitutional violation"); *Williams v. City of Charlotte*, No. 23-1665, 2025 WL 841836, at *3 (4th Cir. Mar. 18, 2025) (same). While there are "narrow circumstances in which 'a finding of no liability on the part of the individual municipal actors can

co-exist with a finding of liability on the part of the municipality," *see Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 463 (D. Md. 2020) (citing *Int'l Ground Transp. v. Mayor And City Council Of Ocean City, MD*, 475 F.3d 214, 219 (4th Cir. 2007) (explaining that "a situation may arise in which a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality")), the "key question" remains "whether the [individual municipal actors] committed constitutional violations, not whether they can be held liable for them." *Tserkis v. Baltimore Cnty.*, No. CV ELH-19-202, 2019 WL 4932596, at *8 (D. Md. Oct. 4, 2019). Where the court has already entered judgment that the individual municipal actors, here Correctional Officer Defendants, did not violate Plaintiff's Eighth Amendment right, that answer is dispositive. Therefore, Plaintiff's official-capacity claims under section 1983 fail.

The result is the same even where Plaintiff's theory of municipal liability is based on failure to supervise or train (as to the *Monell* and state-analogue *Longtin* claims) or *respondeat superior* (as to any state constitutional and *Longtin* claims). These claims may only be premised on an underlying constitutional violation by individual actors; again, this court has already found that did not occur by the individual actors at issue here as a matter of law. *See Saltz*, 538 F. Supp. 3d at 552 (quoting *Shaw*, 13 F.3d at 799) (discussing the elements needed to state a § 1983 claim of supervisory deliberate indifference, including that "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff"); *Prince George's Cnty. v. Longtin*, 419 Md. 450, 493 (2011) (explaining that "Maryland's constitution requires more of its municipalities, and accordingly [the Supreme Court of Maryland] has declined to shield municipalities from the unconstitutional acts of its officials").

In short, in view of the court's entry of judgment for Correctional Officer Defendants, the individual municipal actors whose actions Plaintiff contends violated his constitutional rights,

Plaintiff's Counts I, II, and VII as against County Defendants fail as a matter of law.[6] The court will therefore dismiss these claims with prejudice.[7]

### C. Counts III, IV, V, and VI as to Negligence, Gross Negligence, Negligent Training, and Negligent Supervision

County Defendants argue that Plaintiff's Maryland common law claims are subject to dismissal because 1) as to Defendant Cooke, Plaintiff fails plausibly to allege gross negligence and he, like Correctional Officer Defendants, is entitled to public official immunity for the remaining negligence counts; and 2) as to the County, Plaintiff's claims fail because it is entitled to governmental immunity. (ECF No. 29-1 at pp. 11–14.)

#### 1. *Gross Negligence*

Plaintiff does not offer any allegations specific to Defendant Cooke in support of his claim of gross negligence. Instead, he relies upon the general assertion, which the court addressed in its previous memorandum opinion (ECF No. 24), that Defendants "acted with gross negligence and/or malice by intentionally and knowingly failing to provide [Plaintiff] proper medical care, proper supervision, and proper safety precautions." (ECF No. 1 ¶ 181.)

Gross negligence "is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Anne Arundel*

---

[6] It bears repeating that Plaintiff's claims of deliberate indifference stem from the actions of Correctional Officer Defendants, as employees of the County, not from the actions of the involved QHCPs, as employees of Wellpath, a third-party medical services company. (ECF No. 24 at p. 3.)

[7] Further as to Count I in particular, as County Defendants argue, "[f]or purposes of Section 1983, these official-capacity suits are 'treated as suits against the [municipality].'" *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 469 (4th Cir. 2013) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). A district court "correctly dismisse[s] as duplicative [a § 1983 claim] against the individual defendants in their official capacities." *Z.G. by & through C.G. v. Pamlico Cnty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 780 (4th Cir. 2018), *abrogated in part on other grounds, Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023). *See, e.g., Neal-Williams v. Addison*, No. CV 21-3280 PJM, 2024 WL 1995034, at *4 (D. Md. May 6, 2024) (dismissing as duplicative); *Cottman v. Baltimore Police Department*, No. 21-CV-00837-SAG, 2022 WL 137735, at *5 (D. Md. Jan. 13, 2022) (same). Accordingly, dismissal of Count I as against Defendant Cooke is similarly warranted on this basis.

*Cnty. v. Reeves*, 474 Md. 46, 73 (2021).  While "a fine line exists between allegations of negligence and gross negligence," *Stracke v. Est. of Butler*, 465 Md. 407, 420 (2019) (citation omitted), gross negligence is "something *more* than simple negligence, and likely more akin to reckless conduct." *Reeves*, 474 Md. at 73 (emphasis in original) (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)). "Gross negligence, like deliberate indifference, is rooted in intentionality."  *Walker v. Heavener*, No. CV JKB-16-3136, 2019 WL 3017658, at *7 (D. Md. July 10, 2019).  Ultimately, "[a] wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."  *Stracke*, 465 Md. at 421 (quoting *Barbre*, 402 Md. at 187).  "Hindsight is 20/20"; a "well-intended error" in judgment is not the same as "wanton and reckless disregard" for life.  *Id.* at 426 (quoting *McCoy v. Hatmaker*, 135 Md. App. 693, 713 (2000)).

Maryland courts "have made clear that a claim for gross negligence 'sets the evidentiary hurdle at a higher elevation[.]'"  *Id.* at 421 (quoting *Beall v. Holloway-Johnson*, 446 Md. 48, 64 (2016).  "[W]hether or not gross negligence exists necessarily depends on facts and circumstances in each case."  *Bailey v. City of Annapolis*, 252 Md. App. 83, 104 (2021).  "Gross negligence is a question of law 'when reasonable [people] could not differ as to the rational conclusion to be reached.'"  *Stracke*, 465 Md. at 420 (quoting *Romanesk v. Rose*, 248 Md. 420, 423 (1968)).  Importantly, recent Maryland caselaw rejects "the notion that 'ordinary negligence will frequently be enough to create a jury question of whether such negligence was or was not gross.'"  *Bailey*, 252 Md. App. at 106–107 (quoting *Stracke*, 465 Md. at 421).

Plaintiff pleads no set of facts that, even accepted as true, supports a reasonable inference or conclusion that Defendant Cooke in particular acted intentionally to "inflict[] injury" or in a

manner "so utterly indifferent to [Plaintiff's] rights . . . that he act[ed] as if such rights did not exist."[8]  *See Stracke*, 465 Md. at 421, *supra*.

Accordingly, for the reasons discussed above and in the memorandum opinion at ECF No. 24, Plaintiff fails to state a claim of gross negligence against Defendant Cooke.  The court will therefore grant County Defendants' Motion on that basis, and dismiss Counts IV as against Defendant Cooke without prejudice.

### 2.  *Public Official Immunity*

With regard to the remaining Maryland common law claims of negligence, negligent training, and negligent supervision, Defendant Cooke contends he is immune under the common law and statutory doctrines of public official immunity.  (ECF No. 29-1 at p. 11.)  "Maryland courts have long recognized the common law doctrine of public official immunity." *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 297 (D. Md. 2020).  Similarly, Maryland statutory law provides: "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action."  MD. CODE ANN., CTS. & JUD. PROC. § 5-507(a)(1).  "Section 5-507 'is merely a codification of existing common law public official immunity.'"  *Meyler v. Mayor & City Council of Ocean City*, 736 F. Supp. 3d 272, 284–85 (D. Md. 2024) (quoting *Fletcher v. Prince George's Cnty.*, 2017 WL 3302405, at *8 n.14 (Md. Ct. Spec. App. Aug. 3, 2017)).  Based on Plaintiff's alleged facts, the court considers these immunities together.

---

[8] To the extent the court were to consider the generalized allegation as to "Defendants" as a whole, the court already concluded in its previous memorandum opinion that Plaintiff's allegations fail to support a reasonable finding of gross negligence.  *See* ECF No. 24 at pp. 24–27.

The doctrine of public official immunity is "quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct." *Lee v. Cline*, 384 Md. 245, 258–60 (2004) (citing cases); *see Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 331 (2001) (holding public official entitled to protection from "liability arising out of actions or omissions pertaining to hiring, training, and supervising"). Maryland's "common law qualified immunity in tort suits, for public *officials* performing *discretionary* acts, has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called 'intentional torts.'" *Lee*, 384 Md. at 258 (emphasis in original); *see Cooper v. Rodriguez*, 443 Md. 680, 713 (2015) ("Common law public official immunity applies to public officials (as opposed to mere employees) who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties." (footnote and citation omitted)).

"For public official immunity to apply, it must be shown that (1) the actor is a public official, 'rather than a mere government employee or agent'; (2) the alleged tortious conduct 'occurred while the actor was performing discretionary, as opposed to ministerial, acts'; (3) the actor committed the relevant acts 'within the scope of his official duties.'"[9] *Johnson*, 452 F. Supp. 3d at 297 (quoting *Thomas v. City of Annapolis*, 113 Md. App. 440, 452 (1997)). If the three conditions are met, public official immunity is nonetheless "defeated" if the official acts with malice or gross negligence, or commits an intentional or state constitutional tort. *Id.* at 297–98 (citations omitted); *see Cooper*, 443 Md. at 723 (holding gross negligence is an exception to common law public official immunity).

As the court discussed in its previous opinion, the first prong is plainly met here because "correctional officers are public officials." *Cooper*, 443 Md. at 713 n.13 (citing cases). The second

---

[9] The court incorporates its discussion on public official immunity as set forth in its memorandum opinion at ECF No. 24, pages 27–32.

prong is met because correctional officers perform "discretionary acts in furtherance of their duties" when they "exercise[] their personal judgment" in responding to a plaintiff's medical emergency. *Rodwell v. Wicomico Cnty., Maryland*, No. CV DKC 22-3014, 2024 WL 1178202, at *6 (D. Md. Mar. 19, 2024). Similarly, duties related to hiring, retaining, training, and supervising employees have traditionally been recognized as "discretionary." *Cherkes*, 140 Md. App. at 329; *see Cullen v. Somerset Cnty.*, No. CIV.A. WMN-10-0055, 2010 WL 2132794, at *7 (D. Md. May 25, 2010) (explaining that "hiring and supervision are unquestionably discretionary duties"). Finally, the third prong is satisfied here where it is undisputed that the allegations at issue relate to actions undertaken in the course of Defendant Cooke's official duties.

The question then becomes whether public official immunity is "defeated" on Plaintiff's allegations in support of malice, gross negligence, or the commission of intentional or state constitutional torts. *Johnson*, 452 F. Supp. 3d at 297–98 (citations omitted). For the reasons expressed at length above, Plaintiff fails to plausibly allege that Defendant Cooke acted with gross negligence or committed a state constitutional tort. The remaining question, then, is whether Plaintiff adequately pleads that Defendant Cooke acted with malice.

"Actual malice is established by proof that the defendant-officer intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Johnson*, 452 F. Supp. 3d at 298 (quoting *Bord v. Baltimore County*, 220 Md. App. 529, 557 (2014)); *see Leese v. Baltimore Cnty.*, 64 Md. App. 442, 480 (1985), *disapproved of on other grounds by Harford Cnty. v. Town of Bel Air*, 348 Md. 363 (1998) (explaining that "[t]he actual malice needed to defeat official immunity requires an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and wilfully injure the plaintiff") (citations

omitted).  A plaintiff "cannot rely on bare allegations that a particular act raises an inference of malice." *Rodwell v. Wicomico Cnty., Maryland*, No. CV DKC 22-3014, 2024 WL 1178202, at *6 (D. Md. Mar. 19, 2024) (quoting *Koon as next friend of Glay v. Prince George's Cnty., MD*, No. 17-cv-2799-DKC, 2019 WL 1317401, at *7 (D. Md. Mar. 22, 2019)).  "Even at the motion to dismiss stage, 'the plaintiff must allege with some clarity and precision those facts which make the act malicious.'" *Francis v. Maryland*, No. CV ELH-21-1365, 2024 WL 1156407, at *22 (D. Md. Mar. 18, 2024), *appeal dismissed,* No. 25-1405, 2025 WL 2911468 (4th Cir. July 9, 2025) (quoting *Manders v. Brown*, 101 Md. App. 191, 216 (1994)).

Plaintiff offers no clear, precise, or specific allegation that Defendant Cooke acted with malice.  Instead, Plaintiff relies solely on generalized allegations that "Defendants acted with gross negligence and/or malice," "Defendants acted with gross negligence and malice," and "[i]n the alternative, Defendants acted with malice" in failing to address Plaintiff's serious medical needs. (ECF No. 1 ¶¶ 173, 181, 182, 184.)  As with Correctional Officer Defendants, Plaintiff's general, bare allegations about "Defendants" as a group fail to state with clarity or precision what action or inaction he lays at Defendant Cooke's feet.  As a result, the Complaint is insufficient to support a reasonable inference or conclusion that Defendant Cooke in particular had "an evil or rancorous motive influenced by hate" and acted with a purpose of "deliberately and willfully" injuring Plaintiff.  *Hines*, 157 Md. App. at 563 and *Johnson*, 452 F. Supp. 3d at 298, *supra*.

For these reasons, Defendant Cooke is entitled to public official immunity as to Counts III, V, and VI.  The court will therefore grant County Defendants' Motion on that basis, and dismiss Counts III, V, and VI as against Defendant Cooke without prejudice.

### 3. *Governmental Immunity*

Finally, County Defendants contend the County is immune from suit by operation of governmental immunity. (ECF No. 29-1 at p. 12.) Plaintiff does not appear to dispute this argument. As explained below, the court agrees.

"Under Maryland law, counties enjoy governmental immunity from tort liability with respect to 'nonconstitutional torts based on activity categorized as governmental.'" *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 378 (D. Md. 2011) (quoting *Housing Auth. of Balt. City v. Bennett,* 359 Md. 356 (2000)). The State's right, and by extension, the right of the County, "to governmental immunity is 'deeply ingrained in Maryland law' and may not be waived in the absence of express or implied statutory authorization." *Devi v. Prince George's Cnty.*, No. CV DKC 16-3790, 2017 WL 3592452, at *2 (D. Md. Aug. 21, 2017) (quoting *Nam v. Montgomery Cnty.*, 127 Md. App. 172, 182 (1999)); *see also Boyd v. Armstrong*, No. CV ELH-17-2849, 2019 WL 1440876, at *35 (D. Md. Mar. 29, 2019) ("[A] municipality, such as the County, is also entitled to governmental immunity."). "A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." *DiPino v. Davis*, 354 Md. 18, 47 (1999). This court has repeatedly held that operation of a detention facility is "unquestionably a governmental activity." *See e.g.*, *Albero v. Worcester Cnty. Bd. of Commissioners*, No. CV JKB-24-1100, 2025 WL 462588, at *12 n.17 (D. Md. Feb. 11, 2025); *Kleger v. Dorchester Cnty., Maryland*, No. 1:24-CV-00095-JMC, 2024 WL 3555044, at *5 (D. Md. July 23, 2024); *McMahon v. Cnty. Comm'rs of Kent Cnty.*, No. CIV. JFM-13-490, 2013 WL 2285378, at *5 (D. Md. May 21, 2013); *see also*

*Gelin v. Maryland*, 132 F.4th 700, 715–16 (4th Cir. 2025) ("[W]e can imagine no set of facts under which a prison owned and operated by the public doesn't fulfill a governmental function.").

Importantly, enactment of Maryland Local Government Tort Claims Act ("LGTCA") "did not serve to create a cause of action against the local governments or their employees." *Rounds v. Maryland-Nat. Cap. Park & Plan. Comm'n*, 441 Md. 621, 640 (2015). Indeed, "the only actions which can be brought directly against a local government are those authorized by law which is separate and distinct from the LGTCA." *Id.* (citation modified) (quoting *Williams v. Maynard*, 359 Md. 379, 394 (2000)); *see Nam v. Montgomery Cnty.*, 127 Md. App. 172, 184 (1999) ("Nowhere in the Act, however, is there a waiver of immunity so that the governmental entity is subject to being made a party to an action based upon its employee's or agent's tortious acts."); *Hicks v. Anne Arundel Cnty.*, No. CV JKB-20-0022, 2020 WL 7624773, at *5 (D. Md. Dec. 22, 2020) ("A Maryland statute provides that local governments may be vicariously liable for the tortious acts or omissions of their employees, but this statute contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity." (citations omitted)).

Where it is undisputed that Plaintiff's claims arise from the County's operation of QACDC, which is "unquestionably a governmental activity," the County is entitled to governmental immunity for Plaintiff's common law claims asserting nonconstitutional torts.[10] The court will therefore grant County Defendants' Motion as to Counts III, IV, V, and VI as against the County, and dismiss these counts with prejudice as against the County.

---

[10] Further, Plaintiff's failure to address this argument concedes the point. *Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (explaining that a plaintiff "abandon[s]" her claim where she fails to respond to argument).

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, the Motion, construed as a motion to dismiss, shall be granted.[11]

February 2, 2026                                            /s/
                                                            _____
                                                            Julie R. Rubin
                                                            United States District Judge

---

[11] Based on the posture of the case, and the relevant immunity doctrines at issue, the court finds dismissal with prejudice is warranted as to Counts I, II, and VII against County Defendants and Counts III, IV, V, VI against Defendant County.  Dismissal of Counts III, IV, V, and VI as against Defendant Cooke will be without prejudice.  *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (noting that "the nature of dismissal" is left "to the sound discretion of the district court").